JOURNAL ENTRY AND OPINION
{¶ 1} Alltel Corporation ("Alltel") appeals the decision of the trial court denying its motion to stay litigation pending arbitration. Alltel argues the trial court erred in finding that the parties did not enter into an agreement to arbitrate, that the agreement was procedurally and substantively unconscionable, that any offending provisions should have been severed and that federal law governed the arbitration provision. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On August 24, 2000, Edward Schwartz ("Schwartz") read an Alltel advertisement in his Cleveland Plain Dealer. Alltel advertised cellular phone service for "Unlimited Anytime Minutes only $49.99 for life." Alltel's advertisement did not limit the service plan's duration but informed readers that additional roaming charges may apply.
 {¶ 3} In September 2000, Schwartz visited his local Alltel store to inquire about the advertised service plan. Alltel employees presented Schwartz with Alltel's standard form contract, which Alltel had prepared in advance. Schwartz signed up for an Alltel plan for the contracted rate of $49.95 per month with a roaming fee of $.59 per minute. However, in the Notes/Special Situation section of the contract was the following handwritten passage:
"$49.95 unlimited local air time for life as long as customer remains on rate plan with Alltel."
 {¶ 4} The handwritten terms in the Notes/Special Situation section of Schwartz's service contract identically matched Alltel's Cleveland Plain Dealer advertisement, which Schwartz read on August 24, 2000.
 {¶ 5} The service agreement contained the following provision in small print on the reverse side of the document:
"Any dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration administered by the American Arbitration Association. Each party will bear the cost of preparing and prosecuting its case. We will reimburse you for any filing or hearing fees to the extent they exceed what your court costs would have been if your claim had been resolved in state court having jurisdiction. The arbitrator has no power or authority to alter or modify these Terms and Conditions, including the foregoing Limitation of Liability section. All claims must be arbitrated individually, and there will be no consolidation or class treatment of any claims. This provision is subject to the United States Arbitration Act."
 {¶ 6} The service agreement also contained a provision limiting the liability of Alltel, which read:
"Our liability regarding your use of the services or equipment, or the failure of or inability to use the services or equipment is limited to the charges you incur for services or equipment during the affected period. This means we are not liable for any incidental or consequential damages (such as lost profits or lost business opportunities), punitive damages or exemplary damages, such as attorney fees."
 {¶ 7} Alltel placed the arbitration provision of the agreement on the back page of a one-page, legal-size agreement, in a light-gray small font, at the very end of the page. Alltel also placed the limitation of liability provision on the back of the agreement in the same light-gray small font but this time in capital letters. Alltel placed both provisions among other boilerplate, contractual language.
 {¶ 8} Additionally, above the signature line, Alltel placed an explicit acknowledgment that the consumer understands and accepts the "terms and conditions on both sides" of the agreement. Finally, Alltel also included a "Notes/Special Situations" section that allows parties to write in additional terms. At the time of the agreement, this section contained the above-quoted handwritten phrase, "$49.95 unlimited local air time for life as long as customer remains on rate plan with Alltel." Schwartz signed the agreement without writing in any new additional terms.
 {¶ 9} In January 2001, some four months later, Alltel sent Schwartz a letter informing him that Alltel would be raising his rates from the contracted rate of $49.95 per month to $59.95 per month for unlimited local calling, due to the "increased cost of doing business." The letter also informed Schwartz that Alltel raised Schwartz's roaming rate from $.59 per minute to $.99 per minute. On November 20, 2001, Schwartz filed the instant class action lawsuit against Alltel alleging breach of contract, violation of the Ohio Consumer Sales Practices Act ("CSPA") and fraudulent inducement.
 {¶ 10} In response to the lawsuit, Alltel filed a motion to stay litigation pending binding arbitration. Schwartz filed a brief in opposition raising the argument that the arbitration provision of the agreement was unconscionable. Before the trial court rendered a decision, Alltel and Schwartz filed several motions, including motions for leave to file reply and sur-reply briefs and motions to strike. After negotiating, the parties agreed that the trial court would decide the arbitration issue solely based on Alltel's motion to stay, Schwartz's brief in opposition, and Alltel's reply brief. The trial court heard oral arguments on November 22, 2002.
 {¶ 11} On July 21, 2005, the trial court issued its written opinion denying Alltel's motion to stay litigation pending binding arbitration.[1] In its decision, the trial court found Alltel's arbitration provision procedurally and substantively unconscionable.
 {¶ 12} Alltel appeals, raising the five assignments of error contained in the appendix to this opinion.
 {¶ 13} In its first assignment of error, Alltel argues: "The Trial Court Erred in Finding there was no Agreement to Arbitrate." This assignment of error lacks merit.
 {¶ 14} This assigned error is unusual in that Alltel argues that if the trial court based its decision to deny arbitration on the finding that there was no agreement to arbitrate, the trial court erred. In making this argument, Alltel quotes the following sentence from the trial court's opinion: "[the] agreement to arbitrate was not voluntary in a real and genuine sense."
 {¶ 15} This court has reviewed the trial court's opinion and order and finds that the trial court based its decision to deny arbitration on a finding of procedural and substantive unconscionability, on public policy grounds and on the basis that the contract was adhesive in nature. The trial court did not base its decision on the conclusion that the agreement to arbitrate did not exist.
 {¶ 16} Accordingly, Alltel's first assignment of error is overruled.
 {¶ 17} In its second and third assignments of error, Alltel argues that the trial court erred in concluding that the arbitration agreement was procedurally and substantively unconscionable. Because these assignments of error utilize identical standards of review, this court will address them contemporaneously.
 {¶ 18} When addressing whether a trial court has properly granted a motion to stay litigation pending arbitration, this court applies an abuse of discretion standard. Carter Steel Fabricating Co. v. Danis Bldg. Constr. Co. (1998),126 Ohio App.3d 251, 254-55. An abuse of discretion connotes more than an error of law or judgment. Instead, it implies the trial court's judgment was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Absent an abuse of that discretion, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 19} However, when an appellate court is presented with purely legal questions, it applies a de novo standard of review.Akron-Canton Waste Oil, Inc v. Safety-Kleen Oil Servs., Inc.
(1992), 81 Ohio App.3d 591, 602. Under a de novo standard of review, an appellate court does not give deference to a trial court's decision. Akron v. Frazier (2001), 142 Ohio App.3d 718,721.
 {¶ 20} In the instant case, Schwartz challenges the enforceability of the arbitration clause in this contract, asserting that it is unconscionable.
 {¶ 21} The issue of unconscionability is a question of law.Ins. Co. of North America v. Automatic Sprinkler Corp. (1981),67 Ohio St.2d 91, 98. Accordingly, this court must conduct a factual inquiry into the particular circumstances of the transaction in question. Id. Such a determination requires a case-by-case review of the facts and circumstances surrounding the agreement. Vincent v. Neyer (2000), 139 Ohio App.3d 848,854-56. Because this case involves legal questions, we will apply a de novo standard of review.
 {¶ 22} Initially we note that arbitration is encouraged as a method of dispute resolution, and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision. Williams v. Aetna Fin. Co.,83 Ohio St.3d 464, 471, 1998-Ohio-294. R.C. 2711.01(A) sets forth Ohio's public policy favoring arbitration and provides as follows:
"A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 {¶ 23} An arbitration clause may be legally unenforceable if the clause is not applicable to the matter at hand, if the parties did not agree to the clause in question, or if the arbitration clause is found to be unconscionable. Ida MayFortune v. Castle Nursing Home, Holmes App. No. 05 CA 1, 2005 Ohio-6195.
"Unconscionability refers to the absence of a meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to one party [Citation omitted.] Accordingly, unconscionability consists of two separate concepts: (1) substantive unconscionability, which refers to the commercial reasonableness of the contract terms themselves, and (2) procedural unconscionability, which refers to the bargaining positions of the parties. [Citation omitted.]
"* * *
"Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. [Citations omitted]"
* * *
"Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., `age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. [Citation omitted.]"
Fortuna, supra.
 {¶ 24} In order to negate an arbitration clause, a party must establish a quantum of both substantive and procedural unconscionability. Small v. HCF of Perrysburg, Inc.,159 Ohio App.3d 66, 2004-Ohio-5757.
 {¶ 25} In concluding that the arbitration agreement was substantively unconscionable, the trial court found the contractual language was unconscionable because it limited the rights of consumers to file as a class, it did not put a consumer on notice as to his rights regarding future liability and it prohibited any award of attorney fees. We agree with the trial court's conclusions.
 {¶ 26} By eliminating a consumer's right to proceed through a class action, the arbitration clause directly hinders the consumer protection purposes of the CSPA. Eagle v. Fred MartinMotor Co., et al., 157 Ohio App.3d 150, 2004-Ohio-829. The United States Supreme Court has expressed the importance of class actions:
"The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise. * * * The financial incentive that class actions offer * * * is a natural outgrowth of the increasing reliance on the `private attorney general' for vindication of legal rights[.]" Deposit Guaranty Natl. Bank v.Roper (1980), 445 U.S. 326, 338, 100 S.Ct. 1166.
 {¶ 27} Additionally, R.C. 1345.09(F)(2) grants attorney fees for any violation of Ohio's CSPA; and yet Alltel's limitation of liability section expressly forbids an award of attorney fees.
 {¶ 28} In response to this argument, Alltel argues that the agreement provides for reimbursement of fees to the extent that they exceed what court costs would have been if the claim had been resolved in a state court having jurisdiction. Moreover, Alltel claims that even though the limitation of liability provision of the agreement prohibits an award of attorney fees, an arbitrator could still award statutory attorney fees. These arguments are without merit.
 {¶ 29} By prohibiting its customers from filing suit as a class, Alltel prevents the cost effective use of class action litigation that can end abusive practices by large corporations in those instances in which individual claims are ineffective. Additionally, the arbitration provision specifically strips an arbitrator of any authority to alter or modify the terms of the arbitration provision or the limitation of liability section.
 {¶ 30} Because Alltel's arbitration provision eliminates the right to proceed through a class action and prohibits an award of attorney fees that are statutorily authorized, the arbitration clause invades the policy considerations of the CSPA. See R.C.1345.09(F)(2). This limitation of consumer rights found within the arbitration provision establishes a quantum of substantive unconscionability.
 {¶ 31} We must now determine whether the arbitration agreement is procedurally unconscionable. When concluding that the agreement to arbitrate was procedurally unconscionable, the trial court made the following findings: the agreement was adhesive; Alltel drafted the contract; Alltel never explained the terms to Schwartz; and the experience of Schwartz in similar situations was less than that of Alltel. We agree with the trial court's conclusion.
 {¶ 32} As stated above, the factors to consider are the "bargaining position of the contracting parties, including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party and who drafted the contract." Eagle, supra.
 {¶ 33} Alltel argues that Schwartz has failed to present any evidence of procedural unconscionability. Alltel claims that the only evidence of any alleged procedural unconscionability was Schwartz's affidavit, which counsel withdrew. Though Schwartz's counsel did withdraw the affidavit, the record contains other evidence of procedural unconscionability.
 {¶ 34} Primarily we note the inherent disparity of the bargaining position of Schwartz and Alltel. Schwartz, a consumer, contracted with Alltel, a multi-billion dollar corporation, for the purchase of a cellular telephone and service. Though we are unaware of how often Schwartz engaged in contracts of this nature, it is clear that for Alltel, this was a common occurrence. Additionally, when Schwartz expressed interest in the advertised deal, an Alltel employee presented him with Alltel's pre-printed form. The form itself contained small, hard-to-read print and contained margin-to-margin boilerplate, contractual language. As stated above, Alltel placed the arbitration provision at the very bottom of the back side of the agreement, without calling any attention to the provision.
 {¶ 35} Moreover, the agreement for service was adhesive in nature. Alltel presented the agreement to Schwartz on a take-it-or-leave-it basis. To receive the advertised offer, Schwartz had to sign Alltel's pre-printed form contract, which contained the arbitration provision. Finally, Schwartz was not represented by counsel when he signed the agreement.
 {¶ 36} Accordingly, we find that sufficient evidence of procedural unconscionability existed at the time Schwartz signed the agreement with Alltel. We further find that the trial court did not err when it determined that the agreement was substantively and procedurally unconscionable.
 {¶ 37} Alltel's second and third assignments of error are overruled.
 {¶ 38} In its fourth assignment of error, Alltel argues that the trial court erred in ignoring the agreement's severability provision.[2] We disagree.
 {¶ 39} Though Alltel's service agreement contained a severability provision, when the cumulative effect of multiple illegal provisions "taints" the overall agreement and prevents a court from enforcing that agreement, severability is improper.Scovill v. WSYX/ABC, 425 F.3d 1012 (C.A.6, 2005). See, also,Alexander v. Anthony Internatl. L.P., 341 F.3d 256, 261 (C.A.3, 2003) ("The cumulative effect of so much illegality prevents us from enforcing the arbitration agreement. Because the sickness has infected the trunk, we must cut down the entire tree.").
 {¶ 40} Schwartz presented enough evidence to show that the agreement in this case contained unenforceable provisions so overwhelming as to "taint" the rest of the agreement. Schwartz has shown both substantive and procedural unconscionability through improper limitation of consumer rights and remedies, the adhesive nature of the service agreement, and the circumstances surrounding his signature of the agreement.
 {¶ 41} Accordingly, we find that the trial court did not err in striking the entire arbitration agreement.
 {¶ 42} Alltel's fourth assignment of error is overruled.
 {¶ 43} In its fifth and final assignment of error, Alltel argues that the trial court erred in ignoring controlling federal law governing the arbitration provision. This assignment of error lacks merit.
 {¶ 44} Alltel bases this argument on the trial court's lack of citations to federal cases and the Federal Arbitration Agreement ("FAA"). However, the trial court did cite to federal authority in its opinion. Additionally, we have previously found that the trial court properly determined that the arbitration provision of the agreement was unconscionable. That the trial court did not reference the FAA in its opinion, does not mean that the trial court did not consider the act in making its proper decision. When Alltel referenced the FAA several times throughout this initial discovery process, it placed the trial court on notice of its reliance on the act. Finally, Alltel provides this court with no authority to support its proposition that because the trial court did not reference sufficient federal case law and the FAA, its decision to deny the motion to stay pending arbitration was improper.
 {¶ 45} Alltel also argues in this assigned error that the trial court erred in not applying the Federal Communication Act of 1934 ("FCA"). However, Alltel raises this issue for the first time on appeal and has thus waived all but plain error. Goldfussv. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process and thereby challenges the legitimacy of the underlying judicial process itself. Id. at syllabus. In response to the waiver argument, Alltel claims that it did make this argument in the trial court below, that it specifically argued "federal substantive law of arbitration" governed Schwartz's claims and required arbitration. This argument is unpersuasive. If Alltel wanted to argue the applicability of the FCA on appeal, it was Alltel's duty to raise this argument below, not merely reference any federal law of arbitration. Accordingly, Alltel waives all but plain error and we decline to find plain error in this case.
 {¶ 46} Alltel's fifth assignment of error is overruled.
 {¶ 47} The judgment of the trial court is affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., And Karpinski, J., concur.
 Appendix Assignments of Error:
 "I. The trial court erred in finding there was no agreement toarbitrate.
 II. The trial court erred in finding the agreement wasprocedurally unconscionable.
 III. The trial court erred in finding the agreement wassubstantively unconscionable.
 IV. The trial court erred in ignoring the agreement'sseverability provision.
 V. The trial court erred in ignoring controlling federal lawgoverning the arbitration provision."
[1] An order granting or denying a stay of an action pending arbitration is a final appealable order pursuant to R.C.2711.02(C).
[2] "No Waiver; Severability: If we do not enforce any right or remedy available under this Agreement, that failure is not a waiver. If any part of this Agreement is held invalid or unenforceable, the remainder of this Agreement will remain in force."